DENISE STREETER, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR DANAE LUCILLE FARMER, PLAINTIFF v. GREENE COUNTY BOARD OF EDUCATION, DEFENDANT

No. 938SC988

(Filed 5 July 1994)

## Schools § 86 (NCI4th)— exit tuition fee—no constitutional or statutory authorization

Defendant board of education could not require the payment of an exit tuition fee of $200.00 as a condition to approving the transfer of a Greene County resident student to a school system in a different county, since such exit tuition fee is not provided for by the constitution and statutes of this state. N.C.G.S. §§ 115C-366(d) and 115C-366.1; N.C. Const. art. IX, § 2.

**Am Jur 2d, Schools § 212.**

STREETER v. GREENE COUNTY BD. OF EDUCATION

[115 N.C. App. 452 (1994)]

Appeal by defendant from amended order entered 7 July 1993 by Judge William C. Griffin, Jr., in Greene County Superior Court. Heard in the Court of Appeals 12 May 1994.

*Everett, Everett, Warren & Harper by Edward J. Harper, II; and Lewis and Burti, by Christopher L. Burti, for plaintiff appellee.*

*Lonnie Carraway for defendant appellant.*

COZORT, Judge.

The issue presented by this appeal is whether or not the Greene County Board of Education may require the payment of an exit tuition fee of $200.00 as a condition to approving the transfer of a Greene County resident student to a school system in a different county. We hold the exit tuition fee is not provided for by the constitution and statutes of this state, and we uphold the trial court's order enjoining the enforcement of the exit tuition fee policy.

The essential facts are not in dispute. Greene County is a small rural county with a rapidly declining public school student enrollment. A significant percentage of the county's population resides in small communities close to the county's boundaries. Many of these residents work in nearby counties and take their children to schools in the neighboring counties where they work. The loss of students has a significant impact on the Greene County Schools, in terms of both student resources and economic resources. The State's allocation to local school units is based on the number of students enrolled. The transfer of students to surrounding counties results in significant funding losses for Greene County.

In an effort to reduce the number of students transferring out of the county, the Greene County Board of Education (hereinafter "Board") adopted, on 20 July 1992, a student transfer policy imposing a fee as a condition of transfer approval. The policy states, in pertinent part:

II.  Release of Greene County Residents to Other School Systems

    A. Contractual agreements are required. Students must be released by the Greene County Board of Education and accepted by receiving systems. Release of Greene County students to other systems results in a decreased enrollment for the Greene County Schools and a subsequent loss of state funding for the Greene County Schools. Therefore,

any release of students to other units will require the payment of an exit tuition fee subject to the provisions below.

1. All requests from handicapped students will be received by the Director of Exceptional Children. Students requiring services not available in Greene County will be released without fee for 1992-93 only.

2. Students who are entering the final year in a given school (example: 6th grade in a K-6 school or 12th grade in a high school) will be released without fee for 1992-93 only.

3. All other Greene County residents requesting transfer to other systems for 1992-93 will be assessed an exit tuition fee of $200, equal to 2/3 of the minimum amount of loss in state funding to Greene County (in 1991-92 dollars) for each pupil released to other units. In subsequent years the exit tuition fee will be the full amount of funding lost. This amount is based on research cited by the Rural Education Institute of East Carolina University. In subsequent years, the exit tuition fee will be based on the dollar amount of state funding per pupil for the preceding year. The Greene County Board of Education hereby authorizes the superintendent to issue letters of release to receiving units upon collection of the above exit tuition fees.

III. These regulations will apply to all student transfers beginning with any transfers for the 1992-93 school year.

Plaintiff lives in Greene County and is employed as an Assistant Principal of J. H. Rose High School in Pitt County. Her daughter, Danae Lucille Farmer, has attended Rose High School since 1991, having enrolled there as a freshman. On 31 July 1992 plaintiff applied for the release of her child to the Pitt County school unit. She did not submit the $200.00 fee. On or about 3 August 1992, the Board denied plaintiff's request. On 24 August 1992 plaintiff appeared before the Board to renew her request. The Board declined to act on this request.

On 28 August 1992, plaintiff sued the Board to enjoin the enforcement of the exit tuition fee policy. Judge David E. Reid, Jr., issued a preliminary injunction, dated 2 October 1992 for 8 September 1992, enjoining the enforcement of the exit tuition fee policy. On 7 July 1993

Judge William C. Griffin, Jr., entered an amended judgment permanently enjoining the enforcement of the policy at issue. The defendant Board appeals.

Defendant Board contends that its exit tuition policy is appropriate under N.C. Gen. Stat. § 115C-366(d) (1991). That statute provides:

A student domiciled in one local school administrative unit may be assigned either with or without the payment of tuition to a public school in another local school administrative unit upon the terms and conditions agreed to in writing between the local boards of education involved and entered in the official records of the boards. The assignment shall be effective only for the current school year, but may be renewed annually in the discretion of the boards involved.

We find defendant's reliance on this statute misplaced. Section 115C-366(d) must be read in conjunction with § 115C-366.1 (1991), which makes specific provisions for the charging of tuition:

(a) Local boards of education may charge tuition to the following persons:

(1) Persons of school age who are not domiciliaries of the State.

(2) Persons of school age who are domiciliaries of the State but who do not reside within the school administrative unit or district.

(3) Persons of school age who reside on a military or naval reservation located within the State and who are not domiciliaries of the State. Provided, however, that no person of school age residing on a military or naval reservation located within the State and who attends the public schools within the State may be charged tuition if federal funds designed to compensate for the impact on public schools of military dependent persons of school age are funded by the federal government at not less than fifty percent (50%) of the total per capita cost of education in the State, exclusive of capital outlay and debt service, for elementary or secondary pupils, as the case may be, of such school administrative unit.

(4) Persons who are 21 years of age or older before the beginning of the school year in which they wish to enroll.

(b) The tuition charge for a student shall not exceed the amount of per pupil local funding.

(c) The tuition required in this section shall be determined by the local boards of education each August 1 prior to the beginning of a new school year.

Reading § 115C-366(d) together with § 115C-366.1, we find the General Assembly provided for local boards to charge tuition only for students who do not reside within the particular board's unit or district, and that such tuition shall not exceed the amount of per pupil local funding. There is no authority for a school board to charge tuition to a student transferring to another school unit. This result is consistent with our state constitution's expressed requirement of free public schools:

(1) *General and uniform system: term.* The General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students.

(2) *Local responsibility.* The General Assembly may assign to units of local government such responsibility for the financial support of the free public schools as it may deem appropriate. The governing boards of units of local government with financial responsibility for public education may use local revenues to add to or supplement any public school or post-secondary school program.

N.C. Const. art. IX, § 2.

Interpreting that constitutional provision, our Supreme Court stated:

We conclude, therefore, that the 1970 reference in Article IX, Section 2(1) to "a general and uniform system of free public schools" requires no substantive change in the state's long standing policy of providing its citizens with a basic *tuition free* education. So long as public funds are used to provide the physical plant and personnel salaries necessary for the maintenance of a "general and uniform" system of basic public education, our public school system is "free"—that is, without tuition—within the meaning of our state constitution. *That the administrative boards of certain school districts require those pupils or their*

*parents who are financially able to do so to furnish supplies and materials for the personal use of such students does not violate the mandate of Article IX, Section 2(1). Nor do we perceive any constitutional impediment to the charging of modest, reasonable fees by individual school boards to support the purchase of supplementary supplies and materials for use by or on behalf of students.*

*Sneed v. Greensboro Board of Education*, 299 N.C. 609, 617, 264 S.E.2d 106, 112-13 (1980) (latter emphasis added).

The fee imposed by the Board below goes far beyond a modest fee or charge for supplementary supplies and cannot stand. The trial court correctly enjoined its enforcement.

In coming to this decision, we are mindful of the difficulties facing small rural school districts, such as Greene County. Nonetheless, we must interpret the constitutional provisions and the statutes as we find them. The relief sought by Greene County is simply not available without specific legislative authority.

In its second argument, defendant Board contends the trial court erred "by permanently enjoining appellant from denying any request for reassignment without full consideration of the best interest of the individual child involved in such request." Defendant contends it is inappropriate for the court to require the Board to apply the best interest of the child test. We dismiss this argument. In amending the judgment, the trial court deleted any reference to "the best interest of the individual child." The section to which the defendant objects reads, in its amended form: "5. That the defendant be, and is hereby, permanently enjoined from denying a request for reassignment of Danae Lucille Farmer without complying with North Carolina General Statutes Section 115C-366."

We find the decree in question fails to present any justiciable issue concerning the "best interest of the child." Rather, it merely directs the defendant Board to comply with the correct section of the General Statutes in considering plaintiff's request for reassignment.

Affirmed.

Judges ORR and MARTIN concur.